UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------  X

BETTY JENKINS and SHANIQUA JENKINS,

                                              Plaintiffs,                    __10 CV 4535 (AJN)__

                    -against-                                        **ORAL ARGUMENT
                                                                     REQUESTED**

THE CITY OF NEW YORK; P.O. JORGE TOBON,
SHIELD #29637; CAPTAIN LICHTBRAUM; LT.
GREEN; SGT. MCALLISTER; DET. BROOKS; DET.
HARRIS; P.O. CAESAR; DET. DIONNE; P.O.
COLLAZO; P.O. BRUCE; DET. HABERSHAM; P.O.
ALEX, the individual defendant(s) sued individually and in
their official capacities,

                                              Defendants.

-------------------------------------------------------------------  X


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


Dated:  September 7, 2012

                              KUSHNER LAW GROUP, P.L.L.C.
                              *Attorneys for Plaintiffs*
                              16 Court Street, Suite 2901
                              Brooklyn, New York 11241
                              718.504.1440 (tel) / 718.504.4630 (fax)

                              By:

                              Michael P. Kushner, Esq.

1

<u>**TABLE OF CONTENTS**</u>

<u>**INTRODUCTION**</u>……………………...…………………………………… 1

<u>**STATEMENT OF FACTS**</u> ……………....………………………………… 3

<u>**STANDARD OF REVIEW**</u> ……………………………………………… 4

<u>**ARGUMENT**</u>

     **I.**    **DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT IS IMPROPERLY SUPPORTED
            AND IS PREMATURE** ………………………………………… 5

     **II.**   **DEFENDANTS DID NOT HAVE A VALID
            SEARCH WARRANT, THUS THEIR ENTRY INTO
            PLAINTIFFS' APARTMENT AND SUBSEQUENT
            SEIZURE ARE VIOLATIVE OF THE FOURTH
            AMENDMENT** ……………………………………………… 7

     **III.**  **DEFENDANTS ARE NOT ENTITLED TO
            SUMMARY JUDGMENT ON PLAINTIFFS'
            CLAIMS FOR FALSE ARREST AND IMPRISONMENT** ……… 8

          **A.** **Defendants' Proffered Basis for Probable
               Cause is Misleading** ………………………………………9

          **B.** **Defendants Cannot Establish Constructive Possession**………...12

     **IV.**  **THE INDIVIDUAL DEFENDANTS ARE NOT
            ENTITLED TO QUALIFIED IMMUNITY
            BECAUSE THEIR ACTIONS WERE NOT
            OBJECTIVELY REASONABLE**……………………………16

     **V.**   **PLAINTIFFS MALICIOUS PROECUTION CLAIMS
            ARE PROPERLY SUPPORTED AND ANY ISSUE
            AS TO PROBABLE CAUSE IS PURELY FACTUAL
            AND INAPPROPRIATE FOR SUMMARY JUDGMENT** ……… 18

          **A.** **Taking all Disputed Facts in Favor of the Plaintiffs,
               the Proceeding Against Plaintiffs were not Supported
               by Probable Cause** ………………………………………… 18

          **B.** **Defendants Acted with Malice in Proceeding
                Against Plaintiffs** ……………………………………………19

**VI.     SUMMARY JUDGMENT MUST BE DENIED AS
TO PLAINTIFFS' STATE LAW CLAIMS FOR
NEGLIGENT SUPERVISION, HIRING AND
RETENTION, FAILURE TO SUPERVISE** ……………………… 19

**VII.    MUNICIPAL LIABILITY** …………………………………..……... 21

**VIII.   CONCLUSION** …………………………………………………… 22

## TABLE OF AUTHORITIES

### Cases

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) …………………………………   4

*L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81 (2d Cir. 1998) ……………………………… 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ………………………………………………4

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208 (2d Cir. 2001) ……………………… 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ………………………………………… 5

*Douglas v. City of New York*, 595 F. Supp. 2d 333 (S.D.N.Y. 2009) ………………………… 5

*Tycoons Worldwide Group (Thailand) Public Co., LTD. v.JBL Supply Inc., et al.*,
721 F.Supp. 2d 194 (S.D.N.Y. June 16, 2010) ………………………………………………… 5

*Weyand v. Okst,* 101 F.3d 845 (2d Cir. 1996) ………………………………………   8, 17

*Broughton v. State*, 37 N.Y.2d 451 (N.Y. 1975) ……………………………………………8

*Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994) ………………………………………….. 8

*Illinois v. Gates,* 462 U.S. 213 (1982) ……………………………………………… 8, 18

*Singer v. Fulton Cty. Sherriff*, 63 F.3d 110 (2d Cir. 1995) ……………………………………….. 9

*O'Neill v. Town of Babylon*, 986 F.2d 646 (2d Cir. 1993) ……………………………………… 9

*Takacs, v. City of New York*, 2011 U.S. Dist. LEXIS 7055 (S.D.N.Y. Jan. 24, 2011) ……….. 12

*United States v. Heath*, 455 F.3d 52 (2d Cir. 2006) …………………………………………12

*United States v. Pennington*, 287 F.3d 739 (8th Cir. 2002) ……………………………………12

*United States v. Holder*, 990 F.2d 1327 (D.C. Cir. 1993) ……………………………………12

*Davis v. City of New York*, 2007 U.S. Dist. LEXIS 10555 (E.D.N.Y. Feb 15, 2007) …….12, 13

*Torres v. Hanslmaier,* 1995 U.S. Dist. LEXIS 6193 (S.D.N.Y. May 8, 1995) ………….. 12, 14

*People v. Lawrence Johnson*, 2009 NY Slip Op 51009 (U)(Criminal Ct of the City of
  New York, May 26, 2009)………………………………………………………….... 12

*People v. Olivo*, 120 A.D.2d 466 (1st Dept 1986) ………………………………………… 12

*United States v. Jenkins*, 90 F.3d 814 (3d Cir. 1996) ……………………………………….. 13

*United States v. Brown*, 3 F.3d 673 (3d Cir. 1993) ……………………………………… 19

*United States v. Rodriguez*, 392 F.3d 539 (2d Cir. 2004) ………………………………   14

*United States v. Payton*, 159 F.3d 49 (2d Cir. 1998) ………………………………………   14

*United States v. Gordils*, 982 F.2d 64 (2d Cir. 1992) ………………………………………… 14

*Cammick v. City of New York,* 1998 U.S. Dist. LEXIS 18006 (S.D.N.Y. Nov. 17, 1998) …. 15

*Caraballo v. City of New York*, 10-cv-1885 (SJ) (S.D.N.Y. June 26, 2012) ………………… 15

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ………………………………………………… 16

*Mandell v. Cty of Suffolk*, 316 F.3d 368 (2d Cir. 2003) ………………………………………... 16

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ……………………………………….. 16

*McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2005) ………………………………………………... 16

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) ……………………………………………   16, 17

*Martinez v. Simonetti*, 202 F.3d 625 (2d Cir. 2000) ………………………………………… 16

*Papineau v. Parmley*, 465 F3d 46 (2d Cir. 2006) ………………………………………… 17

*Posr. V. Court Officer Shield #207,* 180 F.3d 409 (2d Cir. 1999) …………………………… 17

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997) …………………………….. 17

*Gerstein v. Pugh*, 420 U.S. 103 (1975) …………………………………………………   17

*O'Neill v. Town of Babylon,* 986 F.2d 646 (2d Cir. 1993) …………………………………… 17

*Kinzer v. Jackson*, 316 F.3d 139 (2d Cir. 2003) ……………………………………………… 18

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ………………………………… 18

*Marshall v. Sullivan,* 105 F. 3d 47 (2d Cir. 1996) ……………………………………… 18

*Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) ………………………………………… 19

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159 (2d Dep't. 1997) ………… 20

*Gomez v. City of New York*, 304 A.D.2d 374 (1st Dep't. 2003) .…………………………… 20

*Oliva v. City of New York*, 297 A.D.2d 789 (1st Dep't. 2002) …………………………….. 20

*Day v. J. Vlachos Hellenic Serv. Station*, 2 A.D.3d 482 (1st Dep't. 2003) ……………………… 20

*T.W. v. City of New York*, 286 A.D.2d 243 (1st Dep't. 2001) ……………………………… 20

*Riviello v. Waldron*, 47 N.Y.2d 297 (1979) ………………………………………….. 21

*Barton v. City of New York,* 831 N.Y.S.2d 882 (Sup. Ct. Kings County 2007) …………… 21

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ………………………………… 21

*Davis v. City of New York*, 142 F. Supp.2d 461 (S.D.N.Y. 2001) ……………………….. 21

## Statutes and Rules

42 U.S.C. § 1983 ………………………………………………………………... passim

Fed. R. Civ. P. 34 (b) (2) (E) …………………………………………………………   6

Fed. R. Civ. P. 56 (c) (2) ……………………………………………………………… 2, 6

Fed. R. Civ. P. 56 (d) …………………………………………………………………… 22

Local Rule 56.1 ………………………………………………………………………… 3

## <u>INTRODUCTION</u>

Plaintiffs Betty and Shaniqua Jenkins bring this action against defendants, City of New York and members of the Narcotics Bureau Manhattan North of the New York City Police Department.  The claims arise from plaintiffs' false arrest and unlawful seizure that occurred on July 23, 2008, and the subsequent malicious prosecution that terminated in plaintiffs' favor when all charges were dismissed on March 11, 2009.  The search warrant which gave rise to the defendants' entry into plaintiffs' apartment was obtained through false and misleading statements and stale information, the plaintiffs were arrested despite the absence of any competent evidence that they had dominion and control over the contraband that was discovered secreted away inside the locked bedroom of non-party Darryl Jenkins (Betty's adult son), and the defendants falsely and maliciously told the New York County District Attorney's Office that plaintiffs had committed various crimes. Defendants now move for summary judgment on all of plaintiffs' state and federal claims.

The defendants have proffered no competent evidence to connect either plaintiff with the contraband that was discovered secreted away inside of the locked bedroom of Darryl Jenkins.  Defendants' summary judgment motion should be denied because there are triable issues of material fact as to the heart of plaintiffs' claims.  Among other things, the parties differ about the following issues: (1) whether any confidential-informant buys ever occurred at or in the vicinity of the door to apartment 12A; (2) whether either of the plaintiffs or non-party Darryl Jenkins ever interacted with a confidential-informant during any alleged drug transaction; (3) whether a confidential-informant actually purchased drugs from individuals at apartment 12C rather than apartment 12A; (4) whether the investigation into drug trafficking at 237 West 127th Street that led to the search warrant utilized one, two, or three confidential informants; (5) whether any or all of the confidential informants were known to be reliable and the basis for that determination; (6) whether the alleged third-buy from apartment 12A ever occurred; (7) whether any of the alleged controlled

Page 1

buys were conducted during a time when either or both of the plaintiffs would have been present inside of apartment 12A; (8) whether any of the targets of the search warrant ever were present inside of apartment 12A; (10) whether and to what extent the defendants participated in the prosecution of plaintiffs; (11) whether the City of New York was aware that these members of the Narcotics Bureau Manhattan North were insufficiently trained concerning the execution and procurement of search warrants; and, (12) whether the City of New York failed to adequately monitor, supervise, and re-train these members of the Narcotics Bureau Manhattan North concerning the execution and procurement of search warrants.

Notwithstanding the wealth of case law and statutory law that requires an evidentiary showing that the persons arrested exercised dominion and control over the contraband, the defendants argue that plaintiffs' mere presence in the apartment is more than sufficient to establish arguable probable cause. This argument is simply wrong: whether probable cause existed depends on the location of the contraband in relation to the plaintiffs, whether the contraband was in plain view, and whether or not plaintiffs exercised some degree of dominion or control over the contraband.

Without some specific, competent evidence that either plaintiff exercised dominion and control over the contraband that was secreted away behind a locked door, there was no basis for their arrest. Moreover, defendants knew that they could not arrest either plaintiff without some evidence linking them to the recovered contraband. That the defendants lacked probable cause for the arrest was confirmed when the charges were dismissed by the New York County District Attorneys Office.

In addition to the existence of triable issues of material fact, defendants' motion for summary judgment is improperly supported pursuant to Fed. R. Civ. P. 56 (c) (2) and is prematurely brought because defendants have frustrated the discovery process and failed to disclose information

until after depositions have been conducted so as to hinder the impeachment of the deponent police officers.  Defendants' motion for summary judgment should be denied in all respects concerning plaintiffs' claims for: false arrest alleged in the first claim; malicious prosecution alleged in the fourth and fifth claims; failure to supervise alleged in the sixth claim; negligent supervision, hiring, monitoring, training and retention alleged in the ninth claim; and *respondeat superior* liability against defendant City of New York alleged in the twelfth claim.  Plaintiffs hereby withdraw with prejudice their second, third, seventh, eighth, tenth, and eleventh claims as alleged in the amended complaint. As is more fully set forth in this Memorandum of Law and in the accompanying declarations, plaintiffs respectfully propose that the Court bifurcate the thirteenth claim for Municipal Liability against the City of New York.

## **STATEMENT OF FACTS**

The facts of this case are set out, incorporated by reference herein, in the accompanying Plaintiffs' Response to Defendants' Local Rule 56.1 Statement, the declaration of Michael P. Kushner, and the documents annexed thereto, as well as those documents submitted by defendants.

In sum, on July 23, 2008, the defendants entered the plaintiffs' apartment at approximately 1:15 p.m. pursuant to the alleged authority of a search warrant.  The defendants seized plaintiffs and placed them in handcuffs before interrogating them concerning the whereabouts of non-party Darryl Jenkins (Betty's son and Shaniqua's brother).  The defendants then broke into a locked bedroom that was under the exclusive custody and control of Darryl Jenkins and began to search the room.  Neither plaintiff had a key to access this room.  Secreted away inside of Darryl Jenkins' bedroom were narcotics, marijuana, a firearm, and related contraband.  The defendants then placed a phone call to Darryl Jenkins and had him return to the apartment.  Once he returned to the apartment, the defendants placed him in custody and transported him and

plaintiffs to the 25th Precinct, located in New York, New York. Plaintiffs were each charged with two counts of Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of Marijuana in the Fifth Degree, and Endangering the Welfare of a Child.

At the time of the arrest, plaintiff Betty Jenkins was a 58 year-old woman; she was caring for two children as part of her day care business. At the time of the arrest, plaintiff Shaniqua Jenkins was a 16 year-old high school student; she had just returned to the apartment after spending the morning hours at summer school. Neither plaintiff was the subject of the search warrant; the defendants were not in receipt of any information concerning plaintiffs' commission of any crime; neither plaintiff exercised any dominion or control over the contraband that was secreted behind the locked door. Despite the glaring lack of any basis to arrest plaintiffs, the defendants took them into custody and initiated and continued a prosecution against them. Plaintiffs were injured as a result of the defendants' unlawful actions and suffered emotional harm and financial loss.

## STANDARD OF REVIEW

A district court may not grant summary judgment if a genuine issue of material fact exists. *Jenkins v. City of New York,* 478 F.3d 76, 89-91 (2d Cir. 2007). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. *L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law…' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208,

212 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Genuine issues of material fact exist with respect to plaintiffs' claims, and the resulting liability of each defendant.

Defendants' motion for summary judgment overlooks the "irreconcilable conflicts between the parties' accounts of what happened" between February 21, 2008 and the dismissal of all charges against plaintiffs, and ask this Court to disregard well settled law prohibiting the Court, on a motion for summary judgment, from resolving factual disputes or making credibility determinations. *Douglas v. City of New York,* 595 F. Supp. 2d 333, 337 (S.D.N.Y. 2009). Accordingly, defendants' motion for summary judgment must be denied in part.

## ARGUMENT

## I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS IMPROPERLY SUPPORTED AND IS PREMATURE

First, plaintiffs object to defendants' reliance on the deposition testimony of either plaintiff because the testimony is not signed by the deponent and counsel was not served an original and a copy per the "Federal Stipulations" that are ordinarily provided for in the deposition testimony. *See,* e.g. Ex[1]. 4, p. 3 ("an unsigned copy of this deposition may be used with the same force and effect as if signed by the witness, 30 days after service of the original & 1 copy of same upon counsel for the witness."). Defendants never effected service of the deposition testimony of the plaintiffs upon counsel. *See,* Ex. 12, ¶ 3. The defendants should not be permitted to rely upon the deposition testimony of plaintiffs that have not been properly presented to them for their review, comment, and signature. *See,* Fed. R. Civ. P. 30 (e) and *Tycoons Worldwide Group (Thailand) Public Co., LTD. V. JBL Supply Inc., et al.,* 721 F.Supp. 2d 194 (S.D.N.Y. June 16, 2010). Not only should defendants be precluded from relying on the deposition testimony because of their failure to

---

[1] All references to "Ex. __ " refer to the Exhibits annexed to the Declaration of Michael P. Kushner, dated September 7, 2012.

properly serve the transcript, they should be precluded because plaintiffs in fact have necessary changes to make to the deposition testimony. *See*, Ex. 11.

Second, plaintiffs object to defendants' reliance on the deposition testimony of defendants Tobon and McAllister because neither deponent has signed the transcript, nor is a certification in lieu of signature presented.  Plaintiffs further object to the defendants' reliance on the deposition testimony of defendants Tobon and McAllister because both depositions preceded defendants' disclosure of documents that materially impact the testimony of both defendants concerning, among other things, the dates of any alleged buys, whether the door to Darryl Jenkins' bedroom was locked, and which confidential informant was "known to be reliable."  *See*, Ex. 9 (correspondence letter dated June 11, 2012 from A.C.C. David Pollack attaching a purportedly "complete set" of Complaint Follow-Up Reports and photographs); Ex. 7 (photographs clearly showing that the door to Darryl's bedroom was locked and needed to be forcefully opened); Ex. 8 (Complaint Follow-Up Reports that show discrepancies in testimony of deponents).

Finally, plaintiffs object to defendants' reliance on Exhibits F, G, L, and Q because they are inadmissible documentary evidence and pursuant to Fed. R. Civ. P. 56 (c) (2) should not be considered by the Court on a motion for summary judgment.  The documents at each of these exhibits are unsigned police reports that have been offered by defendants to assert the truth contained in the documents despite the fact that multiple levels of hearsay exist on the documents. Further, the documents were clearly produced from an electronic source but have not been produced to plaintiffs in their native format despite plaintiffs' demand that any electronic discovery be produced in its native format.  *See*, e.g., Exhibit L, each page contains a clear "http://" stamp at the bottom of the document showing that the document was recovered from some sort of electronic document management system or intranet.  *See*, Fed. R. Civ. P. 34 (b) (2) (E).

## II.    DEFENDANTS DID NOT HAVE A VALID SEARCH WARRANT, THUS THEIR ENTRY INTO PLAINTIFFS APARTMENT AND SUBSEQUENT SEIZURE ARE VIOLATIVE OF THE FOURTH AMENDMENT

Defendants, in conclusory fashion, purport to have had a valid search warrant that authorized their entry into plaintiffs' home on July 23, 2008.  It is argued by defendants that "plaintiffs do not and cannot provide any evidence whatsoever to indicate that defendants knowingly, intentionally or recklessly made false statements in acquiring the search warrant." *See*, Point I of defendants' Memorandum of Law, dated August 17, 2012.  However, this argument ignores several extraordinarily material disputes of fact that exist concerning the investigation into the narcotics trafficking at 237 West 127th Street.  These disputes of fact are the following: (1) Whether any controlled buys ever occurred at or near the plaintiffs' door to the apartment. Defendants assert that their confidential informant purchased marijuana on two occasions from the door to plaintiffs' apartment ostensibly from Darryl Jenkins, or one of the plaintiffs.  However, each plaintiff and Darryl Jenkins categorically deny this allegation. *See*, Ex. 1, ¶¶ 12, 13, and 15; Ex. 2, ¶¶ 11, 12, and 13; Ex. 3, ¶¶ 6 and 7. (2)  Whether either of the plaintiffs or Darryl Jenkins ever interacted with the confidential informant on any of the alleged positive controlled buys.  *Id.*  (3) Whether the confidential informant purchased drugs from apartment 12C and the defendants erroneously listed this information as apartment 12A.  (4) Whether the investigation into drug activity at 237 West 127th Street utilized more than one confidential informant.  *See*, Ex. 8, page NYC192.  If more than one confidential informant was utilized, this begs the question of which confidential informant was "known to be reliable" as indicated in the search warrant affidavit.  (5) Whether any of the John/Jane Does identified in the investigation ever were inside of plaintiffs' apartment as indicated by the search warrant affidavit and allegedly the confidential informant. Further, whether any of the John/ Jane Does identified in the investigation ever were identified as

either of the plaintiffs or Darryl Jenkins.  *See*, Ex. 4, pp. 40:23-46:5; Ex. 5, pp. 27:13-25, 31:21-25, 52:18-54:20, Ex. 6, pp. 34:7-24, 50:6-52:11.

These disputed issues of material fact are proper for a jury to decide.  Defendants do not and can not put forth any competent evidence to counter the factual allegations that remain to be resolved concerning the underlying investigation into narcotics trafficking that culminated in the unlawful entry into plaintiffs' apartment.  As with the other opposed portions of defendants' motion for summary judgment, the facts simply have not been clearly produced such that as a mater of law, defendants should succeed.

### III.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR FALSE ARREST AND IMPRISONMENT

The defendants' motion for summary judgment of the plaintiffs' claim for false arrest and imprisonment rests on a profoundly misleading interpretation of both the law and the facts. More precisely, the defendants suggest that this Court adopt a new bright-line, strict liability standard, under which probable cause exists to arrest any and all occupants of an apartment when contraband is found therein, regardless of where the contraband is recovered from, the location of the individuals, and the absence of evidence connecting the apartment to the contraband.  Such an extreme reading of the law is unsupported by the defendants' selective citations, much less the larger body of case law.

As a general matter, it is well settled that the "existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under Section 1983." *Weyand v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996), citing *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975).  A determination of whether probable cause to arrest exists depends on the "totality of the circumstances." *Bernard v. United States*, 25 F.3d 98, 102, (2d Cir. 1994), citing *Illinois v. Gates,* 462 U.S. 213, 230, (1982).  Probable cause is established "when the arresting officer has 'knowledge or reasonable trustworthy information sufficient to

warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton Cty. Sherriff*, 63 F.3d 110, 118 (2d Cir. 1995), citing *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993).

Here, to establish probable cause for the plaintiffs' arrest, the defendants have to show that Betty and Shaniqua each constructively possessed the contraband found within Darryl's locked bedroom. The doctrine of constructive possession requires some showing of a nexus between the contraband and the person to be arrested; that the putative criminal defendant was able to exercise control and dominion over the contraband. Here, there is no evidence of any such constructive possession by the plaintiffs. Accordingly defendants' motion should be denied.

A.    **Defendants' Proffered Basis for Probable Cause is Misleading**

Defendants argue that probable cause existed to believe plaintiffs were engaged in illegal drug trafficking and thus their arrest of plaintiffs on July 23, 2008 was privileged. Defendants further argue that probable cause existed to believe that plaintiffs constructively possessed the contraband recovered from Darryl's bedroom and thus their arrest of plaintiffs on July 23, 2008 was privileged. Defendants' proffer the following bases for their probable cause determination: (1) an anonymous complaint was made on February 21, 2008 that crack cocaine was being sold out of 237 West 127th Street "24/7" by three unknown black males in the lobby, on the 3rd floor from 3H, and on the 12th floor from 12A; (2) on April 28, 2008, defendant Tobon discovered that plaintiffs and Darryl Jenkins resided in apartment 12A; (3) it was discovered that Betty operated a day care service from the apartment; (4) detective Tobon completed a "recon" of the apartment to ensure that the door to apartment 12A actually existed; (5) on some unknown dates, defendants allegedly completed three positive buys with a confidential source from apartment 12A; (6) the confidential informant allegedly told defendants that he got the drugs from apartment 12A; (7) the three allegedly positive

buys were conducted in the early afternoon hours right at the front door of the apartment; and, (8) one of the allegedly positive buys was used to get the search warrant.

Defendants then argue that probable cause existed because: (a) the search warrant was "executed in the early afternoon – the same time the buys were made – in an effort to ensure the same parties were present when the buys of narcotics were made;" (b) plaintiff Shaniqua testified that she was home from school as usual on July 23, 2008; (c) the apartment had a long hallway and Darryl's bedroom where the contraband was recovered would have to be pass the threshold of his bedroom; and, (d) Darryl didn't work in 2008 and neither plaintiff could explain the source of the money recovered from inside of his bedroom. Then, as if to fully underscore the importance of the allegedly positive controlled buys from apartment 12A, defendants argue: "as a result, the totality of these circumstances – most notably the three controlled buys at the front door of plaintiffs' apartment, executed at the same time as the warrant [     ]." *See* Defendants' Memorandum of Law, pp. 8, 9, and 10.

However, defendants' most notable basis is simply a fabrication that is not supported by the evidence. The three allegedly positive confidential informant buys are set forth in Complaint Follow-Up Reports Nos. 9, 10, and 12. Taken on their face, Nos. 9 and 10 contain absolutely no indication of what time of day the allegedly positive confidential informant buy occurred. No. 12 indicates that the allegedly positive confidential informant buy occurred at some point after 3:10 p.m., hardly "early afternoon." Since none of the deposed defendants can recall the specifics of any of the allegedly positive confidential informant buys, it is simply implausible that any rational trier of fact could possibly believe this proffered basis. *See,* Ex. 4, pp. 38:8-39:12; Ex. 5, p. 47:14-23; Ex. 6, p. 40:20-24. This simply belies defendants' assertion that the time of day of the allegedly positive controlled buys provides them with any probable cause for the arrest of plaintiffs. *See,* Ex. 6, pp. 61:20-62:11 (defendant McAllister states "We made it a point to go in that late afternoon, so it was

my perception that anybody in there had to know what was going on coming out of the apartment or what was coming out of the apartment."); Ex. 6, pp. 67:8-68:15.  Further, the allegedly positive controlled buys would have occurred during a time when plaintiff Shaniqua was in school and therefore, the defendants' proffered probable cause with respect to her knowledge is completely defeated.  *See*, Ex. 2, ¶¶ 4 and 5.  Further, none of the deposed defendant could acknowledge what their basis was for the allegation that Shaniqua would have known what her brother was up to. *See*, Ex. 6, pp. 64:16-68:15.

Of defendants' other proffered bases for the existence of probable cause, some of the alleged facts were clearly not present at the time the arrest was made, e.g. Betty's daycare business was not discovered until after the arrest, Shaniqua testified that she returned home from school as usual, Darryl didn't work and neither plaintiff could explain the source of the funds recovered from his bedroom.  Thus, these facts cannot be used now to try and create probable cause after the fact for the arrest of plaintiffs.  Further, some of the proffered bases for the existence of probable cause are utterly irrelevant, such as the anonymous complaint which was made two months before Tobon every took a single investigatory action and over five months before the entry into plaintiffs' apartment, or the "recon" that was done to show that the apartment door existed, or the computer check that showed plaintiffs and Darryl Jenkins residing in apartment 12A.  Finally, defendants' proffered bases for probable cause suffers irreparable harm when viewed in light of the fact that the subsequently turned over documents reveal the use of at least two confidential informants; thus, defendants' argument that they had a "reliable" source of information that narcotics trafficking was occurring at the plaintiffs' residence is simply beyond credible.

What defendants are left with as the basis for their probable cause then, is simply the presence of contraband that is discovered secreted away inside of a locked bedroom; the two plaintiffs neither exercised dominion or control over the area where the contraband was recovered,

nor could they have because they did not have a key to the lock that was broken by defendants in order to recover the contraband.  Such a "flimsy reed" hardly survives even the barest scrutiny into whether probable cause existed to arrest either plaintiff.

> **B.**   **Defendants Cannot Establish Constructive Possession**

The doctrine of constructive possession is not new, nor is it in dispute.  As the Hon. Leonard B. Sand recently held:

> The doctrine of constructive possession allows the police to find probable
> cause to arrest anyone in a dwelling when contraband is discovered in plain
> view and it reasonably appears that all members of the dwelling
> exercised dominion and control over the area in which the contraband is found.

*Takacs, v. City of New York*, 09-cv-481 (LBS), 2011 U.S. Dist. LEXIS 7055 at *8 (S.D.N.Y. Jan. 24, 2011), citing *United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006), *United States v. Pennington*, 287 F.3d 739, 747 (8th Cir. 2002), *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993).

Similarly, in *Davis v. City of New York*, 04-cv-3299 (JFB)(RLM), 2007 U.S. Dist. LEXIS 10555 *17 (E.D.N.Y. Feb 15, 2007), the Hon. Joseph F. Bianco correctly articulated the existing state law standard, holding,

> Under New York law, a person 'constructively possess tangible
> property when exercises dominion and control over the property
> with a sufficient level of control over the area in which the contraband is found.

*Id.*, citing *Torres v. Hanslmaier*, 94-cv-4082 (MGC), 1995 U.S. Dist. LEXIS 6193 at *6-7 (S.D.N.Y. May 8, 1995).  *See also*, *People v. Lawrence Johnson*, 2008NY091609, 2009 NY Slip Op 51009 (U) [23 Misc 3d 1130(A)] (Criminal Court of the City of New York, May 26, 2009 (citing appellate division cases for the rule that "Dominion and control can be demonstrated in a variety of ways, including proximity of a defendant to contraband, defendant's authority over a person who possesses contraband as expressed via instructions, or via commands, or defendants control over a premises); *People v. Olivo*, 120 A.D.2d 466, 466-467 (1st Dept 1986) (an inference of possession cannot be

placed upon so slender a reed as the access a defendant share with other adults who also could have owned the property).

The *Davis* case is instructive.  There, members of the NYPD executed a search warrant in an apartment where various plaintiffs, including brothers James, Jesse, and Roosevelt Davis lived.  According to the police, marijuana was recovered in plain view in the bedroom James and Jesse shared and bullets were recovered from a drawer in Roosevelt's bedroom.  The plaintiffs, however, stated that the only marijuana in the house was in Roosevelt's pocket, which the police seized during the search.  *Id.* at *6.  The Court denied defendants' motion for summary judgment, finding that while there was no dispute that marijuana was recovered in the apartment, a question of fact existed as to whether it was in plaint view in the bedroom, or on Roosevelt's person. *Id.* at *23.

More significantly, the Court also found that summary judgment was not appropriate with respect to the arrest of James and Jesses for the bullets recovered from Roosevelt's room. There, the Court held, the mere fact that they were in the same apartment as the bullets did not, without some evidence of their dominion and control over the bullets, establish constructive possession.  *Id.* at 30-31, citing *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996)("Dominion and control are not established, however, by mere presence on the property where it is located or mere association with the person who does control the drug or property.") (citation and quotations omitted); *see also United States v. Brown*, 3 F.3d 673, 681 (3d Cir. 1993)("[W]hile the evidence may be sufficient to show that [the defendant] was residing at the [co-defendant's] home and that she knew that drugs were in the house, the evidence is not sufficient to support the finding that she exercised dominion and control over the drugs.").

The Second Circuit has confirmed the general rule that proximity and knowledge do not, without more, compel a finding of constructive possession.  As the Court has held, "[t]o establish constructive possession, the government must demonstrate that [the defendant] had the

Page 13

power and intention to exercise dominion and control over the heroin." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004), citing, *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). Furthermore, "mere presence at the location of contraband does not establish possession." *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988)(per curium).  And, in *United States v. Samaria*, 239 F.3d 228 (2d Cir. 2001), the Second Circuit held that the defendant who was a passenger in his own car while it contained contraband was not in constructive possession of stolen goods because "there is no evidence that [the defendant] handled any of the boxes or directed where they were to be taken or what was done with them." *Id* at 239.  Thus "mere proximity or presence is therefore insufficient to support a finding of constructive possession."  *Rodriguez*, 392 F.2d at 548, citing *United States v. Gordils*, 982 F.2d 64, 71 (2d Cir. 1992).

Notwithstanding the well settled law on constructive possession and probable cause, defendants now suggest that this Court ought to create a new rule, one that would hold that probable cause exists to arrest any and all individuals found in an apartment where contraband is located, regardless of whether there is any evidence to suggest these individuals exercised dominion and control over that contraband.  Such a rule would stand well-settled jurisprudence on its head.

The cases cited by defendants for this proposition are unavailing.  For instance, in *Torres v. Hamslmaier*, the district court addressed a habeas petition challenging the sufficiency of the evidence that he possessed the contraband found in his apartment.  The district court noted not only that there was ample evidence that petitioner resided in the apartment with his wife and child, but that the "petitioner admitted to [the arresting officer] that any drug paraphernalia found in the apartment belonged to him." This statement, coupled with the evidence of his residency, established constructive possession. 94-cv-4082 (MGC), 1995 U.S. Dist. LEXIS 6193 at *6-7 (S.D.N.Y. May 2, 1995).  In no way does *Torres* stand for the proposition that a resident in an apartment is, as a matter of law, in constructive possession of all contraband in an apartment.

*Cammick v. City of New York* is not any more helpful to defendants.  In *Cammick,* police officers executed a search warrant at an apartment in which two sisters lived with one woman's young child.  The older of the two sisters informed the officers that they alone lived in that apartment.  Thus, when an operable machine gun was found in a closet, the Court found that the women were in constructive possession of that weapon.  96-cv-4374 (RPP), 1998 U.S. Dist. LEXIS 18006 at 3-4 (S.D.N.Y. Nov. 17, 1998).  Here too, possession was determined based on the facts of the case.  *Cammick* is not helpful to defendants' argument because the contraband discovered secreted away in Darryl's bedroom was behind a locked door that neither plaintiff exercised any degree of dominion or control over.

*Caraballo v. City of New York*, 10-cv-1885 (SJ) (S.D.N.Y. June 26, 2012) is also clearly distinguishable from the case at bar.  In that case, the Judge's decision raises no material issue of fact concerning the location of the contraband that was recovered.  Plaintiffs appear to have made no affirmative allegation concerning the location of the contraband, nor did they challenge the defendants' assertion that they exercised dominion and control over the contraband.  Further, plaintiffs in *Caraballo* suffered *de minimus* damages because they were detained for a small number of hours and the charges were ultimately declined by the prosecutor's officer.

Here, the record demonstrates that all of the contraband was recovered secreted away in Darryl's bedroom behind a locked door.  Defendants cannot show any link that would establish either plaintiff's exercise of dominion or control over the area where the contraband was recovered and thus the defendants had no basis to arrest either plaintiff for their constructive possession.

**IV.    THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR ACTIONS WERE NOT OBJECTIVELY REASONABLE**

None of the individual defendants are entitled to qualified immunity because no reasonable police officer could find the arrest of plaintiffs objectively reasonable, particularly here, where the defendants found all of the contraband secreted away behind a locked door that by their own admission was under the control of Darryl Jenkins.  The individual defendants' acts here take them outside of the doctrine that generally will shield police officers "from liability for civil damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982); *Mandell v. Cty of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (A government actor may be shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights.").

As the Second Circuit observed in 1991, "[t]he right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Thus, an arresting officer may be entitled to qualified immunity with respect to claims of false arrest and malicious prosecution only, "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2005), quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995); *see also, Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  There is no question that the conduct here constitutes the type of police misconduct that cannot be shielded by qualified immunity.

The Second Circuit has articulated the following standard for determining motions for qualified immunity where the test is objective reasonableness:

Page 16

> [I]f any reasonable trier of fact could find that the defendants'
> actions were objectively unreasonable, then the defendants are not
> entitled to summary judgment.  An officer's actions are objectively
> unreasonable when no officer of reasonable competence could have
> made the same choice in similar circumstances.

*Lennon v. Miller*, 66 F.3d at 420-421; *see also, Papineau v. Parmley*, 465 F3d 46, 59-60 (2d Cir. 2006).

The salient issue before this Court is whether it was objectively reasonable for the individual defendants to believe that they could arrest Betty and Shaniqua without violating their constitutional right not to be falsely arrested and imprisoned and have a malicious prosecution brought against them.  The record before this Court is unequivocal: not only could a trier of fact conclude that the conduct was objectively unreasonable, such a conclusion is the only one that can be reached on the record before this Court.  Accordingly, the individual defendants' motion for summary judgment based on qualified immunity should be denied, and the affirmative defense should be stricken altogether.

It is well settled that the elements of a federal constitutional claim for false arrest under 42 U.S.C. § 1983 are substantially the same as a state law false arrest claim.  *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996).  In sum, in order to place a person under arrest, the arresting officer must be in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense.  *Posr. V. Court Officer Shield #207,* 180 F.3d 409, 417 (2d Cir. 1999); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997), citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir. 1993).

In the case at bar, there is no question that contraband was recovered that was secreted away inside of the locked bedroom of Darryl Jenkins.  The defendants cannot point to any fact that would indicate that either plaintiff exercised dominion or control over the location where the contraband was recovered.  Under these circumstances, no reasonable officer could have believed this to be acceptable conduct.

Page 17

As there is ample evidence that the defendants arrested the plaintiffs solely because of their presence in the same apartment where contraband was recovered, notwithstanding years of case law establishing that such arrests were improper, none of the individual defendants are entitled to qualified immunity and defendants motion should be denied as to this point.

V.   **PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS ARE PROPERLY SUPPORTED AND ANY ISSUE AS TO PROBABLE CAUSE IS PURELY FACTUAL AND INAPPROPRIATE FOR SUMMARY JUDGMENT**

On March 11, 2009, all charges against plaintiffs were dismissed by the New York County District Attorneys Office.  The actions and involvement of Detective Tobon and his supervisor, Sgt. McAllister in prosecuting plaintiffs in relation to the weapons and drug charges constitute an act of malicious prosecution.  To maintain a § 1983 action for malicious prosecution, the plaintiff must demonstrate: (1) that defendants commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in favor of the plaintiff; (3) that the proceeding was not supported by probable cause; and (4) that defendants acted with malice.  *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  The first two elements are satisfied in this case since plaintiff was prosecuted and acquitted.  The following sections demonstrate that probable cause and malice are genuine issues for trial.

A.   **Taking all Disputed Facts in Favor of the Plaintiffs, the Proceeding Against Plaintiffs were not Supported by Probable Cause**

Probable cause is defined as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).  The determination of whether probable cause exists is based on consideration of the totality of the circumstances with reference to the information available to the officer at the time. *Marshall v. Sullivan,* 105 F. 3d 47, 54 (2d Cir. 1996) (citing *Illinois v. Gates*, 462 U.S. 213, 231-33 (1983)).  Defendants rely on their arguments advanced in support of their assertion that probable

cause existed to initiate and continue the prosecution against plaintiffs.  Plaintiffs, therefore rely on

their opposition to defendants' assertions that are argued, *supra*.  There was no probable cause for

either of the plaintiff's arrest and there was certainly no probable cause for their prosecution.

Simply put, defendants improperly arrested plaintiffs and continued the prosecution against them

without any shred of probable cause.  In the case of plaintiff Shaniqua, she was required to appear in

Court and defend herself against these false charges while still attending classes as a 16 and 17 year-

old high school student.

### B.      Defendants Acted with Malice in Proceeding Against Plaintiffs

Malice is typically a question for the jury.  *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir.

1994).  Given that there was lack of probable cause, a jury can determine that defendants acted with

malice in pursuing the prosecution of plaintiff.  *Id.* (explaining that malice may be inferred from a

lack of probable cause and is typically a question for the jury).  Defendants' maliciousness can be

inferred from the actions of defendants, specifically: (1) the arrest of plaintiffs without probable

cause after contraband was recovered that was secreted inside of the locked bedroom; (2) the

fabricated paperwork that was prepared to cover up the investigative steps that were taken; (3) the

false information that was provided to the New York County District Attorney's Office to continue

the prosecution against plaintiffs; and, (4) the fact that the charges were dismissed and sealed against

both plaintiffs only after Darryl Jenkins accepted a plea-bargain in his case.  These circumstances

raise substantial questions and require that a jury determine whether malice was present.

### VI.     SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFFS' STATE LAW CLAIMS FOR NEGLIGENT SUPERVISION, HIRING AND RETENTION, FAILURE TO SUPERVISE

Under New York State law, where an employer cannot be held vicariously liable for

its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent

retention, and negligent supervision. *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159 (2d Dep't. 1997). However, a necessary element of causes of action for negligent hiring, retention, and supervision "is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R., supra*, at 160; *see also Gomez v. City of New York*, 304 A.D.2d 374 (1st Dep't. 2003); *Oliva v. City of New York*, 297 A.D.2d 789 (1st Dep't. 2002); *Day v. J. Vlachos Hellenic Serv. Station*, 2 A.D.3d 482 (1st Dep't. 2003); *T.W. v. City of New York*, 286 A.D.2d 243 (1st Dep't. 2001) ("An employer has a duty to investigate a prospective employee when it knows of facts that would lead a reasonably prudent person to investigate that prospective employee."). Therefore, "recovery on a negligent hiring and retention theory requires a showing that the employer was on notice of the relevant tortuous propensities of the wrongdoing employee." *Gomez v. City of New York*, 304 A.D.2d 374 (1st Dep't. 2001). As described in Exhibit 12 to the September 7, 2012 Declaration of Michael P. Kushner, material facts are currently unavailable to plaintiffs to oppose this portion of defendants' motion for summary judgment.   However, unlike the *Monell* liability, there exist sufficient factual disputes within the record that would make summary judgment on these claims inappropriate.   For instance, defendant Tobon was supervised by defendant McAllister during the entire course of his investigation.   *See*, Ex. 4, pp. 16:22-24, 56: 7-13, 66:4-24.   Defendant McAllister joined the narcotics bureau approximately three months prior to the assignment of this investigation and he then assigned the matter to defendant Tobon who was a police officer, not a detective.   McAllister failed to review the search warrant affidavit prior to its submission to the criminal court justice, and he approved of defendant Tobon's actions in procuring the search warrant, executing the search warrant, and arresting the plaintiffs.   *See*, Ex. 6, pp. 50:4-5, 11:14-19, 12:18-13:2, 22:11-23:9, 27:5-15, and 60:3-10.   Given these facts, a triable issue of material fact exists that would permit a rational trier of fact to hold the defendants liable on these claims.   Therefore defendants' motion for summary judgment on these claims must be denied.

### VII.    MUNICIPAL LIABILITY

Plaintiffs have properly pleaded and maintained claims against the individual defendants for false arrest and imprisonment and malicious prosecution in violation of New York state law.  As discussed above, these claims must survive defendants' motion for summary judgment because genuine issues of material fact exist that must be resolved by a jury.  The doctrine of *respondeat superior* renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment, and the test of whether an act was done within the scope of employment is whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.  *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979).  Defendants can maintain no valid argument that individual defendants' actions with respect to procuring and executing the search warrant and prosecuting plaintiffs were outside of the scope of their employment.  *Cf. Barton v. City of New York,* 831 N.Y.S.2d 882, 887 (Sup. Ct. Kings County 2007) (collecting state cases where the court chose to refuse to find the City liable when the private disputes of its law enforcement officers result in harm).  Thus, plaintiffs' action against defendant City of New York under the theory of *respondeat superior* must survive defendants' motion for summary judgment.

Finally, plaintiffs have alleged that defendant City of New York is liable under 42 U.S.C. § 1983 because the violation of their rights occurred pursuant to a municipal policy, practice or custom.  Specifically, the facts suggest a custom or pattern of failing to adequately investigate narcotics allegations, procure a search warrant, and execute a search warrant within the constitutional framework of the Fourth Amendment.  See *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  "[S]uch a policy need not be contained in a rule or regulation, so long as it is sufficiently established to rise to the level of 'custom or usage with the force of law.'"  *Davis v. City of New York*, 142 F. Supp.2d 461, n. 15 (S.D.N.Y. 2001), quoting *Monell*, 436 U.S at 691.  As discussed

Page 21

more fully in the accompanying Declaration of Michael P. Kushner, Esq. pursuant to Fed. R. Civ. P. 56 (d), at Exhibit 12, certain facts are not within the possession of plaintiffs to fully oppose this portion of the defendants' motion for summary judgment.  Accordingly, plaintiffs respectfully propose that this portion of their claims, the Thirteenth Claim in the amended complaint, be bifurcated from those other claims of the amended complaint.  This would permit the matter to expeditiously proceed to resolution on plaintiffs' main claims and if a jury decides that a constitutional violation has occurred, limited discovery could proceed on plaintiffs' *Monell* claim and if necessary, a limited trial could be held to resolve the remaining allegations.

## VIII.  CONCLUSION

For all the foregoing reasons, plaintiffs request that the Court deny the defendants' motions for summary judgment in all respects concerning plaintiffs' claims for: false arrest; malicious prosecution; failure to supervise; negligent supervision, hiring, monitoring, training and retention; and, *respondeat superior* liability against defendant City of New York.  Plaintiffs request permission from the Court to withdraw with prejudice their second, third, seventh, eighth, tenth, and eleventh claims as alleged in the amended complaint.  And, plaintiffs respectfully propose that the Court bifurcate the thirteenth claim for Municipal Liability against the City of New York until such time as a jury decides whether plaintiffs' constitutional rights were violated by defendants.

Dated: Brooklyn, New York
　　　　September 7, 2012

KUSHNER LAW GROUP, P.L.L.C.
*Attorneys for Plaintiffs*
16 Court Street, Suite 2901
Brooklyn, New York 11241
718.504.1440 (tel) / 718.504.4630 (fax)

_____

Michael P. Kushner, Esq.